# Halso *v.* Seawright.

*Statutory Real Action in nature of Ejectment.*

1. *Alienation of homestead* —A mortgage (or other alienation) of the homestead, if wanting in the essential element of the voluntary signature and assent of the wife, is a nullity : it passes no estate or interest in the land, and

[Halso v. Seawright.]

does not even operate by way of estoppel as against the husband, though founded on valuable consideration.

2. *Acknowledgment of conveyance; nature of power of ·officer taking and certifying.*—In taking and certifying the acknowledgment of conveyances, an officer exercises power which is strictly ministerial, and in no respect judicial.

3. *Clerk of probate judge; statutory powers.*—The clerk of the probate judge, unlike the clerks of other courts, is not an independent officer, clothed with distinct official powers and duties, to be exercised on his own responsibility : but is a mere agent or deputy of the judge, in whose name he acts, and who is responsible for his fidelity.

4. *Same; taking acknowledgment of conveyance of homestead.*—By the general statute (Code, § 702, subd. 6), the clerk of a probate judge is authorized "to do all acts not judicial in their character," and "to take and certify acknowledgments and proof of instruments authorized to be recorded"; and this statute being of force when the suqsequent statute was passed (April 23, 1873) prescribing the manner in which alienations of the homestead should be acknowledged and certified, and giving the power to judges of probate, with other judicial officers particularly named, to take and certify such acknowledgments, the power must be held to be conferred on their clerks also, though not expressly named.

APPEAL from the Circuit Court of Butler.
Tried before the Hon. JOHN P. HUBBARD.

D. BUELL, for appellant.

BRICKELL, C. J.—This was a real action for the recovery of lands, in which the appellant, as administrator of William Mercer, deceased, was plaintiff, and the appellee, Seawright, the tenant in possession, was defendant. On motion, the appellee Graydon, as the landlord of Seawright, was made a party defendant. On the trial, upon the plea of not guilty, the plaintiff deduced title to the lands from a mortgage executed to his intestate in his life-time, by Graydon and wife, on the 14th day of March, 1874 ; the acknowledgment of which is in due form, purporting to have been taken and certified by the judge of probate of the county of Butler, in which county the lands are situated. The lands conveyed are in quantity two hundred acres, and, when the mortgage was executed, were used and occupied by the mortgagor and his wife as the homestead. It was shown by parol, without objection, that the acknowledgment of the execution of the mortgage was not taken by the judge of probate, but was in fact taken and certified by his clerk duly appointed. The Circuit Court was of opinion, and so instructed the jury, that the clerk of the judge of probate was without authority to take and certify the acknowledgment of alienations of the homestead, and, of consequence, that the mortgage was inoperative and void. The correctness of this instruction is the only matter of inquiry in the case, as it has been argued by counsel, and we limit our opinion to its consideration.

It is the mandate of the present, as it was of the constitution of 1868, of force when the mortgage was executed, that an alienation of the homestead, by mortgage or otherwise, by a husband, shall not be valid, without the voluntary signature and assent of the wife. Any alienation not conforming to this constitutional mandate—wanting in the essential element of the voluntary signature and assent of the wife—is incapable of passing any estate or interest in the homestead. It can not operate, by estoppel or otherwise, against the husband, though executed by him voluntarily, upon a valuable consideration : it is simply void—a nullity, to all intents and purposes.

Until the act of April 23, 1873, there was no statute prescribing any particular mode, in which it should be ascertained and manifested that the signature and assent of the wife to the alienation was voluntary. Whenever the alienation was, prior to that statute, acknowledged before an officer having authority to take and certify the acknowledgment of the execution of conveyances of real estate by married women, and the certificate declared (as it must have been declared, to be sufficient, and in conformity to the statutes), that she acknowledged the execution of the conveyance was voluntary, it was held a sufficient, valid alienation, satisfying the constitutional mandate. The 4th section of the act referred to provided the mode in which it should be manifested that the signature and assent of the wife to the alienation was voluntary. Its words are : " No mortgage, or other alienation, of any homestead exempted by this act, by the owner thereof, if a married man, shall be valid, without the voluntary signature and assent of his wife ; which voluntary signature and assent must be shown by the examination of the wife, separate and apart from the husband, touching the same, had before a Circuit or Supreme Court judge, chancellor, or judge of probate, and must be certified to, in writing, indorsed upon such mortgage, by such judge or chancellor, in the following form," &c.—Pamph. Acts 1872-3, p. 65. By an act approved December 13th, 1873 (Pamph. Acts 1873, p. 54), notaries public, or justices of the peace, were clothed with the power of taking and certifying the examination of the wife.

The power created and conferred by the statute originally, though confined in terms to judicial officers, was not in its nature or character judicial—it was strictly ministerial. The officer, in the discharge of the duty, is not required to adjudge or determine any fact—he makes no decision. The duty is fully performed, when separate and apart from the husband he examines the wife, and the wife only, inquiring

[Halso v. Seawright.]

of her whether she will acknowledge that she signed the
alienation of her own free will and accord, without fear, con-
straint, or persuasion of her husband ; and in proper form
he certifies the fact on the conveyance. If he knows the
wife, he merely states the fact ; and if she is not known to
him, the fact that she was made known, or identified. The
wife may refuse to make the acknowledgment ; and though it
could be fully proved that she had previously signed the
conveyance freely and voluntarily, in the absence of all
influence from the husband, the officer could not ascertain
and certify the facts. The whole purpose of the statute is
to charge the duty of taking and certifying the present
acknowledgment of the wife. If it were judicial power the
officer exercised, the certificate could not be impeached
collaterally, because of the duress of the husband : it would
be conclusive, until vacated in some judicial proceeding.
It would be void, if the officer taking it was related to the
parties, in any of the degrees which by statute disqualify
judicial officers. There would be no responsibility for negli-
gence in the performance of the duty, or for a malicious,
corrupt refusal to perform. There is not, in the nature or
character of the duty, any element of judicial power ; and
this must have been the view of the legislature, when, sub-
sequently, notaries public, who are ministerial officers, were
clothed with the power of taking and certifying the examina-
tion.—See *Lynch v. Livingston,* 8 Barbour, 463; *S. C.,* 2 Selden
(N. Y.), 422.

The statute of force long prior to, and when these statutes
were enacted, and which, it must be presumed, was known
to the legislature, had defined the power of the clerk of the
probate judge as follows :   " 1.   To do all acts not judicial
in their character. .     .     .     .     . 3. To administer oaths
relating to the business of the court, and take and certify
acknowledgments and proof of instruments authorized to be
recorded."—Code of 1876, § 702, subd. 6.   Whatever of
mere ministerial power or duty is by law devolved on the
judge of probate, this statute contemplates the clerk shall
have full authority to exercise and perform.   Subsequent
statutes, imposing power and duty on the judge, are to be
read and construed in connection with this statute ; and
there can be no intendment that the power and duty, if it is
not judicial—if it is ministerial—in the absence of prohibi-
tion, shall not be exercised or performed by the clerk.   If
the power is to take and certify acknowledgment or proof of
instruments which may be recorded, it falls within the par-
ticular enumeration of the powers the clerk can exercise.   It
can not be of importance that such statutes may specify the

judge of probate only, omitting all mention of the clerk in conferring the power. There is no statute conferring power on the judge, which makes mention of the clerk, and declares, in express terms, that he may also exercise the power. All statutes are read and construed in the light of the common law, and of pre-existing statutes relating to the same subject. The rules of the common law remain of force, except so far as the statute abrogates them; and pre-existing statutes, except so far as they may be inconsistent with, and repugnant to later legislative enactments. There is no presumption, or intendment, of a legislative intention to abrogate the one, or to repeal, create exceptions to, or withdraw from the operation of the other.

Upon what solid reason can it be supposed it was the purpose of the legislature to prohibit the clerk of the judge of probate from exercising the power of taking and certifying the examination of the wife, as to her signature and assent to an alienation of the homestead, thus creating an exception to the statute which empowers the clerk to take and certify the acknowledgment of conveyances, whenever the judge has the power? Stress is laid upon the fact, that judicial officers only were named in the statute originally, omitting all mention of clerks, or other ministerial officers, mentioned in the statute referring to all other conveyances. But the power and duty is not judicial—it is ministerial— whatever may be the character of the officer upon whom it is conferred. It is mere conjecture, from the omission of clerks, and other ministerial officers, that there was an intention to withdraw the alienation of the homestead from the operation of the statute defining the power of the clerk of the judge of probate ; and it is not upon conjecture that safe statutory construction can rest. If the legislature had deemed it proper to repeal so much of the statute as authorizes clerks of the Circuit Courts, registers in chancery, and the clerk of this court, to take and certify the acknowledgment of conveyances, it would scarcely be contended the statute must be construed as repealing by implication the statute which expressly clothes the clerk of the probate judge with the power and duty of taking and certifying such acknowledgments. The repealing statute would not, by implication, be extended beyond the fair, just meaning of its words. Yet, it could be inquired, why the legislature should have withdrawn the power and duty from clerks of other courts, leaving it in the hands of the clerk of the probate judge,—an officer, it may be, of lesser dignity, and not of higher responsibility. That inquiry would be addressed to the policy or expediency of the enactment, rather than to

[Wood & Houston v. Steele.]

its construction.   When on the probate judge was devolved the duty of taking and certifying the examination of the wife, to an alienation of the homestead, the pre-existing statute intervened, and authorized the clerk of his appointment, in his name, to take and certify it.   For all legal purposes, and in contemplation of law, the act of the clerk is the act of the judge.   Unlike the clerk of the Circuit Court, or the register in chancery, or the clerk of this court, the clerk of the probate judge is not a separate, independent officer, clothed with distinct official power and duty, to be exercised on his own responsibility.   He is a mere agent, or deputy, acting for, and in the name of a principal, who is answerable for his fidelity.   It is the power and duty of the principal he can exercise, so far as the law permits its delegation.   The law sanctions, expressly by its own terms makes a full delegation, of all other than judicial power ; and it is not material whether the power is conferred by pre-existing, or by subsequent statutes.   If by subsequent statutes, the delegation is by legal intendment incorporated, if it is not prohibited.

We can not concur in the opinion of the Circuit Court. The mortgage was properly executed and certified.

Reversed and remanded.